### MORGAN & WRIGHT v. PENNSYLVANIA RUBBER CO.

(Circuit Court of Appeals, Third Circuit. December 7, 1903.)

No. 9.

1. PATENTS—INFRINGEMENT—PNEUMATIC TIRES.

The Morgan & Wright patent, No. 502,047, for a pneumatic tire, comprising a tubular sheath having a limited split or opening for the insertion and removal of an air-tube, and an inclosed removable air-tube, by the language of the specification and claims, as well as by the amendment of the latter in the Patent Office, makes the essential feature of the invention the peculiar flattened closed end portions of the air-tube which extend beyond the inflatable portion, and detachably overlap the same when placed within the sheath, so as to be clasped thereby, and held by pressure against the wall of the sheath when the tube is inflated, forming a practically continuous air-cushion; and the patent is not infringed by a structure which lacks such feature.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

The following is the opinion of Buffington, District Judge, in the Circuit Court:

This is a bill in equity brought by Morgan & Wright against the Pennsylvania Rubber Company for alleged infringement of claims 3, 5, 6, 7, and 8 of patent No. 502,047, granted July 25, 1893, for a pneumatic tire. As the

case turns on infringement, we assume the validity of the patent. The tire described in the patent consists of a noncontinuous inflatable air-tube inserted through a limited opening into a continuous noninflatable sheath. The distinctive feature of this tube-tire is its closure. Mechanically, this is done by flattening or closing its end portions outward from the closure line, and vulcanizing the tube "so as to practically unite the meeting sides of each flattened end as one solid piece." The object of this flattened-end, solid piece, extension-joint structure, as contrasted with simply closing the tube at terminal points, is, as stated by the patent, threefold. The first is the joint-strength thereby secured. "By flattening and closing the end portions of the air-tube as aforesaid, we adapt them to withstand leakage under the strain of inflation, since, in place of simply closing the tube at terminal points, we permanently unite its opposite walls along the end portions of the tube, which union extends back some distance from the terminals of the structure, and render such flattened portions practically solid." The second is the automatic re-enforcement of such joint when inflated in a sheath, from being clamped against the sheath wall by its own inflatable end. "This arrangement also permits us to lap the flattened end portions of the tube upon its inflatable portions, which latter, when inflated, will clamp the flattened end portions against the inner wall of the sheath, thereby firmly holding them, and avoiding any and all displacement during service, and effectively securing the tube against leakage." Third, the overlapping of the solid ends and the inflatable end portions of the tire unite to make a practically solid, continuous tube; the flattened end portions being forced into tube shape by the sheath walls and the inflated tube end, while the abutting or opposing inflatable ends of the tube make a flexible, diagonally arranged partition. "The flattened terminals, a', of the air-tube shown in said Figs. 5 and 6, lap to some extent the inflatable end portions of the tube, and hence when the tube is inflated, the transversely flattened end portions of the tube will be pressed and firmly held against the inside wall of the sheath, and, when thus held against the transversely circular or curved inner wall of the sheath, the said flattened ends of the air-tube will be caused by the internal pressure to partake of the transverse curvature of the wall of the sheath, and thereby lie close to the same, and occupy but very little space. * * * The tube thus inflated will have the practical effect of a continuous tube, since the abutting or opposing lapping inflatable portions of the tube, as at a', will be pressed closely together by the confined body of air, and will lie within the sheath, so as to form a flexible diagonally arranged partition, which will in no wise interfere with the general elasticity of the inflated tire."

An examination of the specifications, drawings, and proceedings in the Patent Office shows that the solid flattened end was a distinctive feature of the invention urged in securing the patent. Not only do we find the element of a flattened end portion carried into each claim here involved, but it was inserted after rejection, and its presence urged as a ground for a patent grant. A division examiner said: "The gist of the rejected claims is an air-tube with overlapping flattened ends;" and the examiner in chief: "The object aimed at, and secured, by flattening the ends of the air-tubes, is to afford means for tightly and reliably closing them prior to inflating, and adapting them, when the tire is inserted in the sheath to overlap, so that the flat ends will each rest upon a portion of the tube which expands on inflation, and preserves a perfectly cylindrical form." Having obtained the patent after inserting this limitation in the claim, the patentees cannot ask for a construction as broad as the claim prior to such limitation. Knapp v. Morss, 150 U. S. 221, 14 Sup. Ct. 81, 37 L. Ed. 1059. Such being the case, it is clear to us no infringement is here shown. The respondent has no flattened end, and no closure by flattened end. Its closure is wholly terminal, in that the tire is inflated to its extreme end. To say that the respondent strengthens and re-enforces such closure, and therefore infringes the patent, is to beg the question. True, it does strengthen and re-enforce such closure, but it is by attaching to the inflated portion behind it. This is re-enforcement of a different type from the patent. The latter was not granted a claim for any re-enforced closure, but for a closure re-enforced by flattened ends. By the grant of the patent the door was not closed to all improvement in this line.

To our mind, the respondent has found a different mode of closure, and such mode is not by a flattened end.

When the patentees, speaking by their counsel, said, in urging the grant of this patent: "In order to effectively close the ends of this light and comparatively delicate structure, the end portions of the tube are, prior to vulcanization, flattened down; and, with a view of so expressing such flattening as to satisfy the examiner that applicants desire to cover only what they have invented, they have, in each of the above claims, defined the flattening as a transverse flattening, since, by taking a section transversely through the end portion of the tube, it will be found to be flattened transversely. Applicants have also particularly specified the fact that the end portions of the tube are thus transversely flattened. By such arrangement a sufficient portion of the tube is flattened down and closed to resist all liability of rupture when the tube is inflated"—they must be held to have meant what they then said. Presumably, the patent authorities regarded their invention as the patentees thus construed it, and granted the patent accordingly. Now, the specification, the drawings, and the Patent Office proceedings make it clear that the flattened end disclosed was one beyond, and not within, the line of closure. If the patentees had in view a claim for an inflatable tapering end, or flattening gradually to a closure at the terminal of the tube, they neither disclosed such invention, nor were granted such claim. The invention disclosed is not that of a flattening end on the inflatable side of the closure line, but of a flattened end on the noninflatable side thereof. To hold this respondent guilty of infringement would be to expand by judicial construction these claims to cover what the patentees did not disclose, and impliedly disclaimed by acceptance of claims with the self-imposed limitation of flattened ends.

Let a decree be drawn dismissing the bill.

Thomas B. Kerr, for appellant.

J. C. Sturgeon and George H. Christy, for appellee.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

DALLAS, Circuit Judge. Suit was brought in the Circuit Court by bill of complaint wherein Morgan & Wright (complainants and appellants) charged the Pennsylvania Rubber Company (defendant and appellee) with infringement of several of the claims of letters patent No. 502,047, dated July 25, 1893, granted to Fred W. Morgan and Rufus Wright, for a pneumatic tire. The claims referred to are as follows:

"(3) An inflatable tire-tube having transversely flattened closed end portions, substantially as described."

"(5) A hollow or pneumatic tire comprising an inflatable tube confined within a sheath, and having closed transversely flattened end portions, substantially as described."

"(6) A hollow or pneumatic tire comprising an inflatable tube having flattened closed end portions, and confined within a sheath, the flattened end portions of said tube being arranged to overlap the inflatable portion of the tube, substantially as described."

"(7) A hollow or pneumatic tire comprising a tubular sheath having a limited split or opening for the insertion and removal of an air-tube, and an air-tube having flattened end portions and confined within the sheath, and having its flattened end portions removably held between the sheath and the inflatable portions of the air-tube, substantially as set forth."

"(8) A hollow or pneumatic tire comprising a tubular sheath having a limited opening for the insertion and removal of the air-tube, an air-tube confined within the sheath, and having flattened end portions, and a shield or layer arranged between the said opening and the inclosed air-tube, substantially as described."

The court below found that the charge of infringement had not been sustained. Was that finding correct? This is the determinative question, and for its solution nothing is needful but that the subject-matter and scope of the claims in controversy shall be distinctly defined and rightly determined; and, to this end, the language of the claims themselves, the patent as a whole, and the proceedings in the Patent Office, have had our careful consideration.

Each of the claims in suit—indeed, every claim of the patent—calls for a construction of tire-tube having flattened closed end portions; and the natural inference from this reiteration, that these flattened closed end portions were regarded by the patentees as of the essence of their invention, the specification, to which we now turn, seems fully to sanction and confirm. The invention is designated as an "improvement in pneumatic tires," the "prominent objects" of which are said to be—

"To close the ends of the air-tube in a simple and reliable way; to permit the ready arrangement of the air-tube within a sheath having a limited opening; to likewise permit the ready removal of the air-tube from a sheath of the character aforesaid, and at the same time to so arrange the air-tube within the sheath that, notwithstanding its closed end portions, it shall form a continuous air-cushion, which, although capable of separation, will during service be practically held together as a single tube, incapable of separation at the joint; also to so close and arrange the ends of the air-tube as to avoid strain and leakage at its said ends as a result of inflation and service."

Then, after stating how the air-tube may be formed, and saying, among other things, "We flatten and close its end portions  *  *  * so as to practically unite the meeting sides of each flattened end as one solid piece," the specification continues thus:

"*  *  *  After thus introducing the air-tube within the sheath, we lap the closed flat end portions of the air-tube upon the inflatable portions of said tube, and, after preferably placing a suitable layer of canvas or any suitable material between the air-tube and the split or opening in the sheath, we suitably close said split or opening. Whenever repair of the air-tube becomes necessary, the air-tube can be deflated, the sheath opened, and the air-tube drawn out through the opening in the sheath, which said operation can be easily performed, since the lapping end portions of the air-tube are separable from one another.

"By flattening and closing the end portions of the air-tube as aforesaid, we adapt them to withstand leakage under the strain of inflation, since, in place of simply closing the tube at terminal points, we permanently unite its opposite walls along the end portions of the tube, which union extends back some distance from the terminals of the structure, and render such flattened portions practically solid. This arrangement also permits us to lap the flattened end portions of the tube upon its inflatable portions, which latter, when inflated, will clamp the flattened end portions against the inner wall of the sheath, thereby firmly holding them, and avoiding any and all displacement during service, and effectively securing the tube against leakage.  *  *  *

"The air-tube, A, Fig. 1, can be formed in any suitable way and of any desired material, but is preferably made of unvulcanized sheet rubber. The ends of the tube can be flattened, as at a, in any desired manner, such as by rolling down the same, or by subjecting them to the pressure of clamping or pressing devices. When made of unvulcanized rubber, it is preferably vulcanized after its ends have been flattened; and in such case we have found it advantageous to subject its flattened ends to compression during vulcanization, so as to insure perfect union. To such end, therefore, we have shown clips or clamps, B, which can be employed to compress the flattened ends of the tube during vulcanization, and which can be used in the first instance to

thus flatten the tube ends. The flattened ends of the tube will, however,. unite by vulcanization without such pressure, and hence we do not limit ourselves to the same. As another way, we can flatten the ends of the tube, and unite the opposing flattened sides of its said ends by cement, and in fact we have so made them with good results. Broadly considered, therefore, we can flatten the ends by any suitable means, and unite the same by vulcanization, or by cementing, or by any mechanical device suitable for the purpose; but, as a matter of further and special improvement, we flatten the ends of the tube, and unite the same by vulcanization, and in such case we first construct the tube with unvulcanized rubber, which will unite by vulcanization, and, by thus forming the air-tube, its flattened ends will be rendered solid and permanently closed. The air-tube thus formed can then be placed within any suitable tire-sheath, and the end portions of the tube can be lapped so that, when the tube is inflated, it will, in effect, form a continuous tube, as illustrated in Figs. 5 and 6, wherein A indicates the air-tube arranged within a sheath, C, and understood to be in an inflated condition. By such arrangement the flattened ends, a, of the air-tube lap the inflatable end portions of the tube, and, owing to their flattened condition, occupy but little room, and do not interfere with the inflation of the tire. Further important advantages of such arrangement are that the tube can be readily and economically made, and that it can be easily introduced into a tubular sheath having only a short slit, c, as an opening through which access can be had to the interior of the sheath. * * *

"The flattened terminals, a, of the air-tube shown in said Figs. 5 and 6, lap to some extent the inflatable end portions of the tube, and, hence, when the tube is inflated, the transversely flattened end portions of the tube will be pressed and firmly held against the inside wall of the sheath, and, when thus held against the transversely circular or curved inner wall of the sheath, the said flattened ends of the air-tube will be caused by the internal pressure to partake of the transverse curvature of the wall of the sheath, and thereby lie close to the same and occupy but very little space, it being seen that the space occupied by the flattened end of the tube is simply proportional to the thickness of the said flattened end, a, and hence the thinner the air-tube, the thinner will be such flattened end. The tube thus inflated will have the practical effect of a continuous tube, since the abutting or opposing lapping inflatable portions of the tube, as at a', will be pressed closely together by the confined body of air, and will lie within the sheath, so as to form a flexible diagonally arranged partition, which will in no wise interfere with the general elasticity of the inflated tire. Should repairs of the air-tube become necessary, it can be deflated, and, owing to the separability of the ends, it can easily be removed through an adjacent opening in the sheath. In this relation, the sheath having a short opening, and the air-tube having separately closed ends, and arranged with its end portions abutting against and lapping one another as shown, becomes a further special feature of improvement; it being obvious that an air-tube having permanently joined ends could not be thus removed through such opening in the sheath, and that, in order to remove a tube having permanently united ends, it would become necessary to split the sheath along its entire length.

"The hereinbefore described mode of flattening the ends of the tube, and vulcanizing the same so as to render said ends solid, forms a feature of improvement which is also preferably embodied in the foregoing described way of arranging the tube within the sheath, although, for the broader purposes of such arrangement, we may flatten the ends of the tube, and unite the opposing flattened sides of the same by cement or otherwise."

The frequency and particularity with which the flattened closed end portions are referred to in the foregoing extracts make it evident that they were considered by the patentees to be the especially characteristic feature of their invention, and that they do in fact lie at the root of all that is disclosed for attainment of its objects is apparent. It is by them that the air-tube is closed in a simple and reliable way, and its ready arrangement within a sheath having a

limited opening is provided for; and, more especially, it is by them that the tube is made capable of arrangement within the sheath, "so that, notwithstanding its closed end portions, it shall form a continuous air-cushion, which, although capable of separation, will during service be practically held together as a single tube, incapable of separation at the joint." There can be no doubt of the importance of the part assigned to these flattened end portions in this arrangement, for says the specification:

"After thus introducing the air-tube within the sheath, we lap the closed flat end portions of the air-tube upon the inflatable portions of said tube." And again: "This arrangement also permits us to lap the flattened end portions of the tube upon its inflatable portions, which latter, when inflated, will clamp the flattened end portions against the inner wall of the sheath, thereby firmly holding them and avoiding any and all displacement during service."

Nothing, we think, could be clearer than this statement. It pointedly differentiates the flattened end portions from the inflatable portions, and it lucidly explains how these two quite distinct, but both essential, parts are made to form a joint incapable of separation. But the meaning of this descriptive language is put beyond possibility of question by the drawings, one of which we here reproduce.

*Fig. 5.*

From this figure it will be seen, as is stated in the specification, that the flattened terminals, a, of the air-tube lap to some extent its inflatable end portions, and hence, when the tube is inflated, the transversely flattened end portions of the tube will be pressed and firmly held against the inside wall of the sheath. It is also said, it is true, that:

"The tube thus inflated will have the practical effect of a continuous tube, since the abutting or opposing lapping inflatable portions of the tube, as at a', will be pressed closely together by the confined body of air, and will lie within the sheath so as to form a flexible diagonally arranged partition, which will in no wise interfere with the general elasticity of the inflated tire."

But the reference here made to "abutting or opposing lapping inflatable portions" neither conflicts with nor modifies the positive and unmistakable direction of the specification, "to lap the *flattened end portions* of the tube upon its inflatable portions," so that the latter, when inflated, will "clamp" the former. The abutting or opposing lapping of the inflatable portions contributes nothing to the clamping. It is the "practical effect" of it. The lapping in the one case is not the same sort of lapping as in the other. In the one the flattened end portions are lapped "upon" the inflatable portions, and, if this were not done, no clamping effect would be secured. In the other the "abutting or opposing" portions are merely "pressed closely together * * * so as to form," not a clamp, but "a flexible diagonally arranged *partition* which will in no wise interfere with the general elasticity of the inflated tire," but which has nothing whatever to do with holding the parts together. The drawing which has been reproduced makes this perfectly obvious. It shows the flattened ends, a, overlapping a portion of the inflated tube, and by it held against the sheath, whereas the diagonal partition, a', is shown simply as the line of contact between abutting or opposing and closely pressed together inflated portions.

That the scope of these claims is determinable by attentive consideration of the terms of the patent itself we think has been made manifest; but as the understanding of them to which such consideration has brought us is quite impressively confirmed by the proceedings in the Patent Office, they, perhaps, should not be left unnoticed. We need not, however, refer to all the pertinent and persuasive portions of the file wrapper and contents. It will suffice to mention that it appears that pending their application the applicants, in response to objections interposed by the examiner, amended their original claims: By striking out claim 6, viz., "(6) a hollow or pneumatic tire comprising an inflatable tube confined in a sheath, and arranged therein *with lapping end portions*, substantially as set forth." By amending claim 7, which read, "(7) A hollow or pneumatic tire comprising an inflatable tube confined within a sheath, and having closed *lapping ends* substantially as described," so as to read: "(5) A hollow or pneumatic tire comprising an inflatable tube confined within a sheath, and having closed *flattened end portions*, substantially as described." By amending claim 8, which read, "(8) A hollow pneumatic tire comprising an inflatable tube having flattened closed *ends* and confined within a sheath, the *end* portions of said tube being ar-

ranged to overlap, substantially as described," so as to read, "(6) A hollow or pneumatic tire comprising an inflatable tube having flattened closed *end portions*, and confined within a sheath, the *flattened* end portions of said tube being arranged to overlap the *inflatable portions of the tube*, substantially as described." By amending claim 9, which read: "(9) A hollow or pneumatic tire comprising a tubular sheath having a limited split or opening for the insertion and removal of an air-tube, and an air-tube having *lapping* end portions and confined within a sheath, and having its *lapping* end portions separable from one another, substantially as set forth," so as to read, "(7) A hollow or pneumatic tire comprising a tubular sheath having a limited split or opening for the insertion and removal of an air-tube, and an air-tube having *flattened* end portions, and confined within a sheath, and having its *flattened* end portions *removably held between the sheath and the inflatable portion of the air-tube*, substantially as set forth." By amending claim 10, which read, "(10) A hollow or pneumatic tire comprising a tubular sheath having a limited opening for the insertion and removal of an air-tube, an air-tube confined within the sheath and having *lapping ends*, and a shield or layer arranged between the said opening and the enclosed air-tube, substantially as described," so as to read, "(8) A hollow or tubular tire comprising a tubular sheath having a limited opening for the insertion and removal of an air-tube, an air-tube confined within the sheath, and having *flattened end portions*, and a shield or layer arranged between the said opening and the inclosed air-tube, substantially as described."

It is not necessary to advert to the communications between the Patent Office and the applicants, which accentuate the significance of these amendments. They speak for themselves, and they tell us—plainly, we think—that the patent which they concerned was granted and accepted upon the mutual understanding that the novelty and utility of the invention to which it related resided chiefly, if not solely, in the peculiar flattened end portions which finally were specifically and distinctively described. We have italicized the especially pertinent parts of the amendments, and no discussion of them is requisite.

Upon the grounds that have been indicated, we hold that the claims in suit cover such tire tubes only as have flattened closed end portions distinct from and extending beyond their inflatable portions, and these the tube which is alleged to infringe does not have. It not only does not have them in the form specifically disclosed and claimed in the patent; it does not have them at all. It does not merely alter, but utterly discards, them. It ends at the point at which they, if present, would begin, and is complete without them. Therefore the question whether two existent devices, though apparently unlike, are not substantially the same, is not presented, and the doctrine of equivalency is irrelevant.

The decree of the Circuit Court is affirmed.